**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 09-184** |
| **KEVIN LEWIS** | **SECTION "B"(5)** |

<u>ORDER AND REASONS</u>

<u>**Nature of the Motion and Relief Sought**</u>

Before the Court is Kevin Lewis's ("Petitioner") *pro se* 28 U.S.C. § 2255 motion. (Rec. Doc. No. 130). Petitioner is currently serving a 360 month sentence imposed by this Court at the FCC-Yazoo City Medium Complex in Yazoo City, MS. Following two direct appeals and the denial of writ of certiorari by the U.S. Supreme Court, Petitioner filed the instant petition, seeking for this Court to vacate and set aside the judgments. (Rec. Doc. No. 130). The Government has filed a response. (Rec. Doc. No. 139). Petitioner filed a reply (Rec. Doc. No. 142) and a supplemental rebuttal (Rec. Doc. No. 144). The Government filed a surreply (Rec. Doc. No. 151). Petitioner's motion to file a response was denied by this Court. (Rec. Docs. No. 152, 154).

**IT IS ORDERED** that Petitioner's motion to vacate his sentence and for evidentiary hearing is **DENIED** and his post-conviction application is **DIMISSED WITH PREJUDICE.**[1]

---

[1] The extensive trial and appellate records, including parties' written memoranda and transcripts,  obviate any need for evidentiary hearing on the instant motion.

**Factual Background**

On June 2, 2010, following a two-day jury trial, Petitioner was convicted along with his co-defendant, James Anderson ("Anderson") of conspiracy to distribute 100 grams or more of heroin, and aiding and abetting the distribution 100 grams or more of heroin. The government's case relied on the testimony of a confidential informant, Bernel Clements ("Clements"). Clements, who had prior state and federal drug convictions, was serving time in prison for violating his federal supervised release by incurring new state drug charges. While Clements was being held on the revocation charges, FBI Special Agent Keith Burriss ("Agent Burriss") approached him about cooperating with the government, and he agreed to do so.[2]

*The Undercover Sting Operation*

On May 1, 2009, the FBI conducted a sting operation, and Clements completed a buy through Anderson. Clements testified that he went to Anderson's store, having arranged to purchase 4 1/2 ounces of heroin for $11,000 provided by the FBI. Anderson placed a call to his "brother in law" and told him to "bring the stuff." The brother-in-law arrived 45 minutes later. Clements testified at trial that the person who arrived was Petitioner, and he identified Petitioner in court. Clements noted that

---

[2] In exchange for his cooperation, the state charges were dropped and adopted as federal charges, and Clements received a reduction in his revocation sentence from 60 months to 30 months. Clements was alo paid $5,970 for living expensed during the time he cooperated.

Petitioner arrived in a black Toyota Camry or Mazda and wrote down the license plate number. Petitioner left and returned about 45 minutes to an hour later with a plastic bag full of heroin. Agents established surveillance on the Camry, which was still at the store, and when the car left the store, requested that police officers conduct an investigatory stop.

*The Investigatory Stop*

Sergeant Guillot, of the New Orleans Police Department, who conducted the stop, testified at trial that Petitioner was the driver of the black Camry. Petitioner had a large wad of cash in his front pants pocket, which Guillot estimated to be about two inches thick and too large to fit in a wallet.

Stacey Anderson ("Stacey Anderson"), Petitioner's girlfriend and Anderson's sister, arrived on the scene. According to Clements, Anderson contacted him later that day and told him that his brother-in-law had been stopped by the police. Clements placed a call to Anderson that was recorded and played for the jury. According to Clements, Petitioner was also on the call. Agent Burriss also identified Petitioner's voice on the recording. Clements testified that the next day, May 2, 2009, he met with Anderson and Petitioner at Anderson's store, and Petitioner asked him if he knew anything about the stop.

At trial, Agent Burriss testified regarding call records for two telephones attributed to Anderson, as well as a

3

telephone in Petitioner's possession at the time of his arrest. Records showed 19 telephone calls between the phones associated with Anderson and the phone associated with Petitioner on May 1, and 14 calls on May 2. After May 2, telephone records showed only two telephone calls between those numbers through the end of June.

Anderson entered into a plea agreement with the Government and received a 78 month sentence. Petitioner went to trial, was convicted and received a 360 month sentence.

**Procedural History**

*Original Sentencing*

This Court ruled that Petitioner's 1992 Louisiana manslaughter conviction, for which he served a ten year sentence, constituted a '"crime of violence," qualifying him for a Section 4B1.1 enhancement under the U.S. Sentencing Guidelines. The enhancement elevated his offense level to 37 and his Criminal History Category to VI, resulting in a guidelines range of 360 months to life. Absent the career offender enhancement, Petitioner would have had a total offense level of 26 and would have been in Criminal History Category IV, yielding a range of 92 to 115 months. This Court sentenced Petitioner to concurrent 360 month terms of imprisonment.

*First Appeal*

With the assistance of appellate counsel, Petitioner directly appealed his conviction and sentence on four bases: (1) career offender enhancement, (2) sufficiency of the evidence, (3) ineffective assistance of counsel, and (4) prosecutorial misconduct.[3] The U.S. Court of Appeals for the Fifth Circuit affirmed Petitioner's conviction but remanded the case for re-sentencing because the record did not support the career offender enhancement.

*Re-Sentencing*

On remand, this Court sentenced Petitioner to 360 months. The Court calculated that, absent the career offender enhancement, Petitioner's total offense level would have been 26 and his Criminal History Category would have been IV, resulting in a Guidelines range of 92 to 115 months. However, Petitioner faced a mandatory minimum sentence of 10 years. Petitioner filed a sentencing memorandum requesting the mandatory minimum sentence of 120 months, arguing his improved circumstances and efforts in prison. This Court was not convinced and noted that Petitioner returned to crime within two years of his release from a prior state drug conviction, for which Petitioner spent 10 years in prison. This Court concluded that a 360 month sentence was appropriate, citing Petitioner's criminal history

---

[3] *United States v. Kevin Lewis*, 442 Fed.Appx. 88, No. 10-30570, 2011 WL 3822016 (5th Cir. 2011).

and the failure of sentences in serious manslaughter and drug convictions to deter him from criminal conduct.

*Second Appeal*

In his second appeal, and with the assistance of counsel, Petitioner argued that this Court abused its discretion when it varied from the advisory guideline sentence and re-sentenced him to a 30 year sentence based upon the factors listed in 18 U.S.C. § 3553(a). Petitioner also argued that the imposition of a 30 year sentence was improperly influenced by the original career offender determination. The Fifth Circuit affirmed this Court's sentence, concluding that this Court appropriately considered the 18 U.S.C. § 3553(a) factors in imposing a 360 month sentence for Petitioner's criminal conviction. Petitioner filed a writ of certiorari to the U.S. Supreme Court, which was denied on March 4, 2013.

*28 U.S.C. § 2255 Habeas Petition*

Petitioner's defense at trial, on direct appeal, and in the instant habeas petitioner is "mistaken identity." Petitioner claims he is not the individual who delivered the heroin to Anderson. In the instant *pro se* Section 2255 petition, Petitioner asserts four claims: (1) denial of effective assistance of counsel at the trial level; (2) denial of effective assistance at the appellate level; (3) prosecutorial misconduct; and, (4) the imposition of an unconstitutional

sentence. Petitioner dedicates the majority of the motion to his first claim for ineffective assistance of trial counsel. Petitioner makes 14 separate arguments under this claim alone. To provide reasonable structure and review, we have grouped similar arguments as well as analysis on core arguments.

The Court now reviews contentions, facts, and the law concerning Petitioner's Section 2255 motion.

## Law and Analysis

Section 2255 of Title 28 of the United States Code provides that a federal prisoner serving a court-imposed sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence." After reviewing the pleadings, any transcripts and records of prior proceedings, the court must determine whether an evidentiary hearing is warranted. *Rules Governing Section 2255 Proceedings*, Rule 8. An evidentiary hearing must be held unless "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Ultimately the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980); *U.S. v. Bell*, No. 09-8, 2011 WL 3240767, at *2 (E.D. La. 2011).

1. *Denial of Effective Assistance of Counsel at Trial*

The Sixth Amendment right to counsel is recognized as "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 685 (1984). A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction has two components. First, the defendant must show that counsel's performance was deficient. *Id*. at 687. Second, the defendant must show that the deficient performance prejudiced the defense. *Id*. No special or additional standards apply to ineffectiveness claims made in habeas proceedings. *Id*. at 698.

Judicial scrutiny of counsel's performance must be highly deferential. *Id*. at 688. The proper standard for attorney performance is that of reasonably effective assistance. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. at 687-88. A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Id*. at 690. The court must determine whether, the acts or omissions identified by the defendant were outside the wide range of professionally competent assistance. *Id*. at 690.

Petitioner takes issue with nearly every aspect of trial counsel's performance. Petitioner's essential complaints can be reduced to five. Trial counsel failed to: (a) investigate or call witnesses; (b) object to hearsay or otherwise impermissible testimony or to impeach testimony; (c) properly advise Petitioner with regard to testifying at trial; (d) move to suppress evidence obtained in violation of the Fourth Amendment; and (e) timely inform Petitioner of a plea deal Petitioner would have accepted.

In making the determination whether the specified errors resulted in the required prejudice, a court should presume that the judge or jury acted according to law. *Strickland*, 466 U.S. at 694. Further, the court must consider the totality of the evidence before the judge or jury. *Id*. at 695. The governing legal standard is: whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. *Id*. The defendant bears the burden of showing that the decision reached would reasonably likely have been different absent the errors. *Id*. at 696. An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Id*. at 692.

### a. Failure to investigate or call witnesses

"[C]ounsel has a duty to make reasonable investigations or

to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. However, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* To succeed on a claim for failure to investigate, a defendant "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Bernard*, 762 F.3d 467, 477 (5th Cir. 2014).

Petitioner claims trial counsel failed to investigate the scene at Anderson's store where the drug buy took place. Petitioner believes that an investigation would have revealed that Clements was not familiar with the scene. Trial counsel's cross-examination of Clements demonstrates that trial counsel was not only familiar with the store and the surrounding area but also that trial counsel sought to generate doubt as to Clements's familiarity with the scene. (Rec. Doc. No. 92 at 180-86).

Petitioner also claims trial counsel failed to interview or call to the stand witnesses that would have testified on Petitioner's behalf at trial and disputed Clements's testimony. Specifically, Petitioner claims counsel failed to call his co-defendant, Anderson, his girlfriend, Stacey Anderson, a Samuel Nicholas, Jr., and his mother Joyce Nicholas. Petitioner has

provided a statement from Anderson, as well as a sworn affidavit from a Mr. Samuel Nicholas Jr. (Rec. Doc. No. 130 at 82, Exhibit D ).

The Court reviews trial counsel's decisions not to call the named individuals against the presumption that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689-90. Complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative. *Bray v. Quarterman*, 265 Fed.Appx. 296, 298 (5th Cir. 2008). To prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must (1) name the witness, (2) demonstrate that the witness was available to testify and would have done so, (3) set out the content of the witness's proposed testimony, and (4) show that the testimony would have been favorable to a particular defense. *Id*. (*citing Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

Petitioner references affidavits throughout the Petition; however, the only affidavit on record is that for Mr. Nicholas (Rec. Doc. No. 130 at 82, Exhibit 130). Petitioner has also included a statement by Anderson (Rec. Doc. No. 130 at 76, Exhibit A-1). Under the foregoing standard, the Court dismisses

Petitioner's claims as to potential witness where no statement or affidavit has been provided. From what the Court can gather from Anderson's handwritten statement, Anderson was available to testify; however, the statement mainly outlines trial strategy for Petitioner and avenues for cross-examination, some of which were covered by trial counsel. The only statement the Court finds could have been favorable to Petitioner's defense is: "Kevin... to the store to pick up an Ipod." (Rec. Doc. No. 130, Exhibit A-1 at 77).

The next inquiry is whether there is a reasonable probability that the uncalled witness would have changed the jury's conclusion that Petitioner was involved in the illicit drug transaction. *See Quarterman*, 566 F.3d at 539. Anderson's testimony would serve as a double-edged sword. Petitioner's defense is "mistaken identity," that is, that he is not the individual that delivered the heroin. While Anderson's statement would provide an alternative rationale for Petitioner's presence at the store, by calling Mr. Anderson as a witness, Petitioner would be admitting that he was in fact present at the store. Moreover, Petitioner forgets that Anderson had already pleaded guilty for the crime for which Petitioner was on trial and had prior drug convictions, on which he would have been cross-examined. Given that Anderson's sister is Petitioner's girlfriend; Anderson would also have been questioned as to bias

and his statements while in the store regarding his "brother-in-law" delivering the heroin. In light of the foregoing, the Court finds that trial counsel acted reasonably and strategically in not calling Anderson as a witness. Moreover, given Anderson's relationship to Petitioner, and the government's evidence adduced at trial, the Court does not find that there is a reasonable probability that Anderson would have been believed by the jury such that the outcome at trial would have been different.

In a sworn affidavit, Mr. Nicholas states that Petitioner, his employee, was at work as a construction laborer on the day in question, and left the construction site once between 11:00 a.m. and 12:00 noon. (Rec. Doc. No. 130 at 82, Exhibit 130). Mr. Nicholas also states that Petitioner left work for the day at 4:00 p.m. and was paid $200 cash for his labor. _Id_. Mr. Nicholas states that he was available to testify and that he was never interviewed by trial counsel. _Id_. Petitioner states "[h]ad counsel properly researched/investigated Petitioner's case, and called key witness(es), there would have been an overwhelming dispute as to the actuality of the money." (Rec. Doc. No. 130 at 26).

Any testimony regarding cash payment would also serve as a double-edged sword; Petitioner would be admitting that he was in possession of cash, consistent with Officer Guillot's testimony.

Trial counsel declined to call Mr. Nicholas for this reason.[4] (Rec. Doc. No. 130 at 26). Thus, the Court cannot find that trial counsel was deficient in not calling Mr. Nicholas as a witness.

At trial, the Court asked Petitioner if he took issue with trial counsel's decision not to present witnesses. Petitioner stated that he agreed with trial counsel. The Court also finds that trial counsel acted reasonably in investigating Petitioner's case. Further, the Court finds that Petitioner has failed to establish that trial counsel was deficient in deciding not to call witnesses.

**b. Failure to object to hearsay or otherwise impermissible testimony**

1. Hearsay Testimony

Petitioner asserts ineffective assistance of counsel and violation of his Sixth Amendment right of confrontation based on Agent Burriss' hearsay testimony that the make and model of Petitioner's car was called out twice over the radio. Assuming the testimony was given for the truth of the matter asserted, the question becomes whether wrongful admission was harmless. *United States v. Templeton*, 624 F.3d 215, 223 (5th Cir. 2010). Petitioner must show that the testimony was crucial to the

---

[4] While Petitioner states that he was only in possession of two (2) $100 bills; the affidavit by Mr. Nicholas does not provide the denominations of the alleged payment. Thus, it is unclear whether Mr. Nicholas, if called to testify, would have rebutted Officer Guillot's testimony.

prosecution or devastating to the defense in the context of the trial as a whole. *Gochicoa v. Johnson*, 238 F.3d 278, 282 (5th Cir. 2000).

Clements first testified that Petitioner was driving a "black Toyota Camry or Maxima." (Rec. Doc. No. 92 at 140). The vehicle was observed by officers on surveillance. (Rec. Doc. No. 92 at 209). Clements provided the license plate number to Agent Burriss. (Rec. Doc. No. 92 at 144). Agent Burriss testified that this vehicle was followed and that he contacted Officer Guillot to request that the vehicle be stopped. (Rec. Doc. No. 92 at 211). Officer Guillot testified that he pulled over a vehicle that matched the description and license plate number. (Rec. Doc. No. 92 at 262-64). Given the foregoing, the Court finds that the testimony at issue was not crucial to the prosecution; that the cumulative testimony of several witnesses was devastating to the defense; and therefore, admission of the individual statement was harmless. Trial counsel was not ineffective in failing to object to admission of the individual statement.

    2. Clements's Prior Assistance

Petitioner contends that trial counsel failed to object when Clements and Agent Burriss testified that Clements previously provided six months of assistance to Agent Burriss and the FBI. The Court is not required on Section 2255 motions

15

to reconsider claims of error raised and disposed of on direct appeal. *United States v. Webster*, 392 F.3d 787, 791 (5th Cir. 2004). On direct appeal, Petitioner alleged prosecutorial misconduct for referring to Clements's prior assistance during closing arguments. *United States v. Kevin Lewis*, 442 Fed.Appx. 88, 91, No. 10-30570, 2011 WL 3822016 (5th Cir. 2011). The Fifth Circuit disposed of the claim upon a finding that any alleged misconduct did not result in the requisite prejudice.

Here, Petitioner seeks to reassert this claim of error by alleging ineffective assistance of counsel. Petitioner does not provide a basis for the objection he claims should have been made where the prosecutor, through reasonable and permissible line of questioning, sought to establish Clements's relationship and relevant history with Agent Burriss and the FBI.

The magnitude of the prejudicial effect is measured by looking at the remark in context and attempting to determine its intended effect. *United States v. Ramirez-Velasquez*, 322 F.3d 868, 875 (5th Cir. 2003). The statements on prior assistance could be read as comments on Clements's credibility. However, they could also be read as providing necessary background. Agent Burriss testified that he first approached Clements for assistance in 2008; however, the drug buy in this case did not take place until 2009. (Rec. Doc. No. 92 at 200). Similarly, Clements testified that he was released to assist the

16

government; however, was placed back in custody after six months to serve his sentence on revocation. (Rec. Doc. No. 92 at 126).

The Fifth Circuit found that the prosecutor's reference to prior assistance did not result in prejudice to Petitioner in light of independent evidence that corroborated Clements. This Court similarly fails to find that the un-objected to testimony crossed the line, and was "so pronounced and persistent" that it "permeated the entire atmosphere of the trial." *Ramirez-Velasquez,* 322 F.3d at 875.

### 3. Anderson's Prior Conviction

Petitioner contends that trial counsel failed to object to introduction of a non-testifying co-defendant's (Anderson) prior drug conviction during opening arguments. (*Id.*). Inconsistently, Petitioner faulted trial counsel for not calling Anderson to testify; however, this prior conviction may have been subject to cross-examination under Federal Rule of Evidence 608.

Clements testified that he first met Anderson when Anderson was serving time. (Rec. Doc. No. 92 at 122). In providing background on why Clements set up the drug buy with Anderson, Clements testified that Anderson had stated to him that he was dealing heroin. (Rec. Doc. No. 92 at 128). This was properly admitted as a statement by a co-conspirator, as discussed below. The Court finds that any statements regarding Anderson's prior drug conviction was also harmless.

4. <u>Co-Conspirator Statements</u>

Petitioner, citing *United States v. James*, contends that Clements testified as to Anderson's statements during the drug buy, and that under Federal Rule of Evidence 801, a 'James Hearing' was required to determine that a conspiracy existed, involved petitioner, and the statements were made during the course and in furtherance of the conspiracy. 590 F.2d 575 (5th Cir.) (en banc), cert. denied, 442 U.S. 917 (1979).

The trial court has discretion to determine the application of the *James* ruling, including the method for proceeding. A separate hearing out of the presence of the jury is not required. *United States v. Gonzalez*, 700 F.2d 196, 203 (5th Cir. 1983). If no separate hearing is held, but "at the end of the trial, the trial judge finds...that a preponderance of the evidence proves the predicate facts, no error has occurred in the admission of the co-conspirator statements." *United States v. Ricks*, 639 F.2d 1305 (5th Cir. 1981); *United States v. Richmond*, No, 00-321, 2001 WL 1117235, at *4 (E.D. La. 2001). The Fifth Circuit has approved the practice of withholding ruling on these preliminary facts until the trial has concluded. *United States v. West*, 58 F.3d 133, 142 (5th Cir. 1995).

This Court did not find that an error had occurred through admission of the co-conspirator statements at the conclusion of trial. The prosecution requested that the statement be admitted

conditionally, and the Court allowed, after stating that a limiting instruction may be given to the jury. (Rec. Doc. No. 92 at 128). The Court did not give that limiting instruction. Implicitly, the Court found that the predicate facts for admission of a co-conspirator's statements had been established. It follows that trial counsel was not ineffective in not requesting a *James* Hearing.

    5. <u>Improper Bolstering of Testifying Witness</u>

    Petitioner contends that trial counsel invited error by asking Agent Burriss if Clements was telling the truth, which resulted in improper bolstering of Clements's testimony. The doctrine of invited error serves as procedural bar on appeal to prevent a party from taking advantage of an error that results when a court rules in accordance with the same party's request or motion for an erroneous ruling. *See Carmell v. Quarterman*, 292 Fed.Appx. 317, 328 (5th Cir. 2008); *see also Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997)(*citing Tucker v. Texas*, 771 S.W. 2d 523, 533-34 (Tex. Crim. App. 1988). The doctrine does not apply here.

    Even in this context, Petitioner must still establish that the statement might have affected the jury's decision. *Burkett v. Thaler*, 379 Fed.Appx. 351, 359 (5th Cir. 2010). Clements's testimony was corroborated by more than this piece of testimony: the investigatory stop; the surveillance; and, the fact that

Petitioner's vehicle and license plate matched that description provided by Clements. The Court finds that Petitioner was not prejudiced by trial counsel's failure to request a curative instruction and move for a mistrial.

### c. Failure to properly advise Petitioner with regard to testifying at trial

Petitioner claims he wanted to testify at trial to dispute Clements's testimony. According to Petitioner, trial counsel erroneously advised Petitioner to waive his right to trial on the basis that Petitioner's prior manslaughter conviction could come up before the jury. Petitioner claims this was erroneous advice because his prior manslaughter conviction did not constitute a violent crime. Although Petitioner does not state this, Petitioner appears to be challenging the knowing, voluntary and intelligent waiver of his Sixth Amendment right to testify at trial.

The government succinctly states the law on this issue:

A movant in a Section 2255 motion "who argues that his attorney prevented him from testifying must still satisfy the two prongs of *Strickland*." *United States v. Harris*, 408 F.3d 186, 192 (5th Cir. 2005). To succeed on this claim, the petitioner "must overcome a strong presumption that counsel's decision not to place him on the stand was sound trial strategy." Where there is no evidence of anything more than defense counsel's view that the defendant ought not to testify, without force or coercion, and the defendant "simply followed the advice of counsel or acquiesced in counsel's strategic trial decision," the claim is insufficient to require a hearing. *United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999).

Petitioner claims trial counsel's advice regarding Petitioner testifying in his own behalf was deficient as the advice was erroneous. In this assertion however, Petitioner, mistakes the admissibility of a prior conviction under the evidentiary rules with the requisite nature of a prior conviction for sentencing enhancement under Section 4B1.1. Although the appellate court found that the government failed to establish Petitioner's prior manslaughter conviction constituted a 'crime of violence' in seeking a sentencing enhancement, this requirement does not apply under the Federal Rules of Evidence.

As Petitioner's prior manslaughter conviction was punishable by more than one of imprisonment, if Petitioner had taken the stand, the prior conviction *may* have been admissible for impeachment purposes under Federal Rule of Evidence 609 at the Court's discretion under a reverse-Rule 403 analysis.[5] At the Court's discretion under Rule 403, Petitioner's prior state drug-conviction would likely have been admitted pursuant to Rule 609(a)(1)(B) for impeachment purposes.[6] Therefore, trial counsel's advice was not erroneous. Moreover, there is no evidence that counsel forced or coerced Petitioner not to testify. Further, the following exchange took place in open

---

[5] Under Rule 609(b) there is a limitation on using convictions more than 10 years old. Petitioner served 3 years on a 1992 manslaughter conviction. As more than 10 years passed since Petitioner's conviction and/or release at the time of trial in 2010, admissibility of the prior conviction would have been subject to a reverse 403 analysis by the Court.

[6] Petitioner was released from incarceration on the state drug charge two years before being charged in the instant case.

court:

| | | |
|---|---|---|
| Court: | Did you discuss all this with your attorney? |
| Defendant: | Yes, sir. |
| Court: | The right to put on a defense, a right to testify, call witnesses? |
| Defendant: | Yes, sir. |
| Court: | Do you agree with his advice not to put on any witnesses? |
| Defendant: | Yes, sir. |
| Court: | And you yourself don't want to testify? |
| Defendant: | No, I do not.[7] |

The Court finds that trial counsel was not deficient in advising Petitioner not to testify, that trial counsel's decision was a strategic one given the evidence that could become admissible on cross-examination as a result, and further, and most importantly, the Court finds that Petitioner knowingly, voluntarily and intelligently waived his Sixth Amendment right to testify in his own defense.

### d. Failure to move to suppress evidence obtained in violation of the Fourth Amendment

Petitioner claims trial counsel failed to move to suppress Officer Guillot's statement regarding the "wad of cash" observed during the pat down. Petitioner contends that the pat down was

---

[7] (Rec. Doc. No. 93 at 29).

illegal as his license and registration came back clean and the officer had already issued the traffic ticket. Petitioner claims that any observations made during the pat down should have been suppressed. Petitioner claims that "[a]bsent this excludable evidence, there is a reasonable probability that the verdict would have been different."

The government contends that Petitioner's Fourth Amendment claim is procedurally barred and not cognizable in a Section 2255 petition, unless Petitioner can first succeed on a Sixth Amendment ineffective assistance of counsel claim and overcome procedural default for failing to raise this claim at trial or on direct appeal.[8] However, Petitioner is not raising an independent Fourth Amendment claim; Petitioner is raising a Sixth Amendment ineffective assistance claim with respect to trial counsel's failure to raise or to move to suppress evidence obtained in violation of the Fourth Amendment. The procedural bar that precludes review of the merits of a Fourth Amendment claim in a Section 2255 petition, does not restrict federal habeas review of Petitioner's Sixth Amendment right to effective assistance of counsel where counsel's error is failure to make a timely request for the exclusion of illegally obtained evidence.

---

[8] The government cites to *U.S. v. Ishmael* (finding collateral review of a Fourth Amendment claim in a Section 2255 petition is barred unless the defendant has not had a full and fair opportunity to raise the claims at trial and on direct appeal. 343 F.3d 741, 742 (5th Circ. 2003)(*citing Stone v. Powell*, 428 U.S. 465 (1976)).

*U.S. v. Alanis*, 88 Fed.Appx. 15, 21 (5th Cir. 2004)(*citing Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986)).

The record indicates that trial counsel did not file a motion to suppress. The question is whether it was objectively reasonable for trial counsel to not have moved to suppress at the time of trial and in light of the facts and circumstances. The evidence presented at trial was obtained during an investigatory stop of Petitioner and his vehicle. During an investigatory stop (temporary detention), a police officer may conduct a frisk (pat-down for weapons) without violating the Fourth Amendment if: (1) the investigatory stop is lawful, and to proceed from a stop to a frisk (2) the officer reasonably suspects that the person stopped is armed and dangerous. *Staten v. Tatom*, 465 Fed.Appx. 353, 358 (5th Cir. 2012)(*citing Terry v. Ohio*, 392 U.S. 1 (1968)).

The *Terry* inquiry requires both the scope and length of the officer's investigation to be reasonable in light of the facts articulated as having created the reasonable suspicion of criminal activity. *U.S. v. Massi*, 761 F.3d 512 (5th Cir. 2014). Once the purpose of a valid traffic stop has been completed and an officer's initial suspicions have been verified or dispelled, the detention must end unless there is additional reasonable suspicion supported by articulable facts. *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006). Officers are allowed

to draw on their own experienced and specialized training to make inferences from and deductions about the cumulative information available to them...". *U.S. v. Khanalizadeh*, 493 F.3d 479 (5th Cir. 2007); *U.S. v. Bringham*, 382 F.3d 500, 507 (5th Cir. 2004).

Petitioner was issued a traffic citation for the window tint and for failing to wear a seatbelt. (Rec. Doc. No. 92 at 266). That Petitioner was stopped on pretext as he was under surveillance in a narcotics investigation is irrelevant, because "an ulterior motive does not strip law enforcement agents of their legal justification" for a traffic stop. *U.S. v. Charles*, 482 Fed.Appx 948, 2012 WL 4762211 (5th Cir. 2012)(*citing Whren v. United States*, 517 U.S. 806, 812 (1996)). Thus, the investigatory stop was lawful.

The officer proceeded to conduct a pat down of Petitioner's person, on the basis of information from the FBI agent that Petitioner needed to be stopped in relation to an ongoing narcotics investigation, as well as the officer's experience that narcotics and violence are associated. The record does not reflect that Petitioner was detained longer than necessary to conduct the pat down and dispel the reasonable suspicion that Petitioner was in possession of a weapon. The Court finds that because the investigatory stop and frisk was clearly lawful, trial counsel was not ineffective for not challenging the

legality and evidence obtained therefrom.

### e. Failure to timely inform Petitioner of a plea deal

Petitioner claims trial counsel failed to timely inform of a 5 year plea offer by the government. Petitioner claims he was not made aware of the plea deal and the time frame for accepting the offer until after the deal expired. Petitioner claims he would have accepted this plea offer with a stipulation on the amount of heroin seized by the FBI. In support of this claim, Petitioner has attached a fax from an Assistant U.S. Attorney (AUSA) to Petitioner's trial counsel noting that a proposed plea offer was made, and providing the time frame for accepting the offer.

According to the government's Response filed by another AUSA who was involved in this case at the trial stage, Petitioner was never offered a 5 year plea agreement. The government supports this by attaching a draft copy of the proposed plea agreement in this case. (Rec. Doc. No. 139-13). The attachment proposes that for consideration of a guilty plea, the government would agree to dismiss the aiding and abetting count, and would agree to not seek a sentencing enhancement pursuant to 21 U.S.C. Sections 841(a)(1) and 851. The document further provides, in relevant part:

> [t]he defendant further understands that the maximum penalties he may receive should his plea of guilty be accepted are a mandatory minimum of five (5) years

> *imprisonment up to a maximum of forty (40) years imprisonment and a fine of $2,000,000 or the greater of twice the gross gain to the defendant or twice the gross loss to any person under Title 18, United States Code, Section 3571.*

The agreement is a standard plea agreement. This foregoing language that Petitioner misinterprets simply advises a criminal defendant of the minimum sentence the Court could have imposed in the absence of the sentencing enhancement and dismissal of Count II, and the maximum sentence the Court could have imposed in the absence of the sentencing enhancement and dismissal of Count II. In other words, if the Court had accepted a guilty plea and the terms of the plea agreement, the Court could have imposed a sentence anywhere from five (5) years to forty (40) years of imprisonment. It should be further noted, that the prosecution could not have offered Petitioner a guaranteed sentence as sentencing in this matter was within the Court's sole discretion.

However, Petitioner claims that no plea offer was communicated to him until after the deadline for acceptance expired, and this alone would constitute deficiency under *Strickland*.[9] Still, to establish ineffective assistance, a defendant alleging that counsel's deficient performance caused him to reject a plea offer must also show prejudice, that is:

---

[9] Trial counsel disputes this. According to trial counsel, John T. Fuller, in a sworn affidavit, the plea offer was timely conveyed to Petitioner, along with the paperwork from the U.S. Attorney's Office. Further, Fuller states that Petitioner flatly rejected the plea offer and insisted on going to trial.  (Rec. Doc. No. 139-4 at 1).

(1) <u>that the defendant would have accepted the plea</u> and the prosecution would not have withdrawn it, (2) that the court would have accepted its terms, and (3) <u>that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.</u> *U.S. v. Reed*, 719 F.3d 369, 375 (5th Cir. 2013).

When trial counsel did inform Petitioner of the plea offer, Petitioner proposed a counteroffer, which Petitioner acknowledges. (Rec. Doc. No. 130 at 41). Thus, even under Petitioner's statement of events, it is unclear whether Petitioner would have accepted the prosecution's plea agreement. Moreover, even if the Court had accepted the guilty plea and the terms of the plea agreement, the Court could have imposed the same sentence Petitioner is currently serving. The Court need not decide whether trial counsel was deficient in communicating a plea offer because the Court finds that Petitioner did not suffer prejudice in this regard.

Petitioner claims that the accumulation of the foregoing errors deprived him of due process. Because the Court finds that each of these allegations are meritless, Petitioner fails to show that he was deprived of due process based on the "accumulation" of these alleged errors.

2. *Denial of Effective Assistance of Counsel on Appeal*

Petitioner claims appellate counsel failed to: (1) raise

trial counsel's failure to raise a Fourth Amendment issue; (2) raise trial counsel's failure to object to hearsay or otherwise impermissible testimony; and (3) raise a Sixth Amendment Confrontation Clause Violation. As the Court finds that trial counsel was not ineffective for not challenging evidence obtained during the investigatory stop, it follows that appellate counsel was not ineffective in not raising this Fourth Amendment issue on appeal. As the Court finds that the testimony with which Petitioner takes issue did not result in the requisite prejudice, it follows that appellate counsel was not ineffective in foregoing these claims on appeal.

   3. *Prosecutorial Misconduct*

      a. The *Brady* Claim

   Under *Brady v. Maryland*, 373 U.S. 83 (1963), a prosecutor has a duty to disclose evidence favorable to a defendant when that evidence is material to either guilt or punishment. To establish a Sixth Amendment due process violation under *Brady*, a defendant must show that: (1) evidence was suppressed; (2) suppressed evidence was favorable to defense; and (3) suppressed evidence was material either to guilt or to punishment. *See Brady, 373 U.S. at 87; U.S. v. Dixon,* 132 F.3d 192, 199 (5th Cir. 1997). The prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant

of a fair trial. *United States v. Bagley*, 473 U.S. 667, 675 (1985). *Brady* does not apply to neutral evidence. *See United States v. Nixon*, 881 F.2d 1305, 1308 (5th Cir. 1989).

Petitioner alleges that the prosecution (1) withheld evidence in regards to Clements's supervised release agreement, (2) withheld evidence regarding Officer Guillot's past and present behavior, and (3) withheld evidence on the "money denominations." In a situation where the prosecutor fails to disclose purely impeaching evidence not concerning a substantive issue in the absence of specific request: the materiality standard is whether the undisclosed evidence "probably would have resulted in an acquittal." *Ogle v. Estelle*, 641 F.2d 1122, 1125 (5th Cir. 1981).

Petitioner claims that under the terms of Clements's Supervised Release Agreement, a judicial order allowing for Clements's cooperation with authorities was required. Petitioner claims there is no such order and that the government withheld this from the defense. First, the Court notes that Clements's supervised release revocation did not require a judicial order. Second, at trial this Court questioned Agent Burriss about whether judicial authorization was obtained. Agent Burriss testified under oath that he made contact with Judge Africk, the judge dealing with the supervised release revocation, to obtain

authorization.[10]

Moreover, this issue is immaterial to Petitioner's guilt or innocence on the conspiracy and aiding and abetting charges. Stated differently, the terms of Clements's supervised release on cooperation are separate and apart from the evidence gathered during that cooperation and the jury's guilty verdict based on the evidence.

What is material to Petitioner's guilt or innocence is the fact that Clements did cooperate with the government in exchange for a potentially lower sentence because this could implicate Clements's credibility and the weight individual jurors may have attached to his testimony. However, the government did not suppress the cooperation agreement. On direct examination, Clements discussed his supervised release and revocation thereof. (Rec. Doc. No. 92 at 123-24). The cooperation agreement was made known to the defense, and discussed at trial during direct examination and cross examination of Clements. (Rec. Doc. No. 92 at 125-126; 152-155).

Petitioner also claims the prosecution withheld evidence

---

[10] Rec. Doc. No. 92 at 226

The Court:   As the case agent on this particular case, I heard you mention earlier that you, through the U.S. Attorney's Office, were going to approach, I believe, Judge Africk dealing with the supervised release revocation?

Rec. Doc. No. 92 at 227

The witness:   No sir. We only approached him to get authorization for him to cooperate.

Rec. Doc. No. 151-3 at 1 Declaration of Keith Burriss. In a sworn affidavit, Keith Burris makes clear that "wherein I stated that 'we only approached him to get authorization for him to cooperate,' I was referring to the authorization sought and received from Judge Africk to get authorization for Bernel Clements to act as a cooperator."

that could have been used to impeach Officer Guillot. In support of the claim, Petitioner brings to the Court's attention a judgment in a criminal case involving Guillot, in which Guillot was charged with and plead guilty to one count of conspiracy to commit wire fraud. (E.D. La. Case No. 12-156, Rec. Doc. No. 51). However, according to the bill of information, the conspiracy in Guillot's case began in June of 2011, and the bill of information was filed in March of 2012. (Id. at Rec. Doc. No. 1 at 3). Petitioner's case, from indictment to the jury's guilty verdict, dates back to June 2009 - June 2010.

In a separate case, Officer Guillot was sued pursuant to 42 U.S.C. § 1983.[11] The complaint in that matter was filed in July of 2011, following Petitioner's trial. Petitioner claims Guillot was investigated in a "Robert Bolton Case" for "drug usage." This 2007 case, *Bolton v. Cooper*, involved a Deputy Kevin Guillot. Officer Guillot served with the New Orleans Police Department from 1992 until 2012, and was promoted to Sergeant in 2003.[12] Thus, Officer Guillot was not involved in this matter.

In 1999, Officer Guillot was sued as part of a team of officers for failure to knock and announce in the execution of a search warrant.[13] That matter was settled on undisclosed terms in 2007. First, the government reasonably claims it was unaware of

---

[11] *Duffour v. Guillot* (2010)(E.D. La. Case No. 11-1766).
[12] (E.D. La. Case No. 07-626); Rec. Doc. No. 149-2 at 5.
[13] *Michalik v. Hermann*, (E.D. La. Case No. 99-3496).

this matter based on an inquiry of the NOPD Public Integrity that revealed no disciplinary or pending civil actions against the officer. Second, this civil action is not material to Petitioner's guilt or innocence. The Court finds that no *Brady* violation occurred with regard to impeachment evidence on Officer Guillot.

Finally, Petitioner claims the prosecution "withheld evidence on the 'money denominations.'" At trial, Officer Guillot testified that he observed a "very large wad of cash" in Petitioner's pants pocket during the investigatory stop. (Rec. Doc. No. 92 at 265). Petitioner claims "the money was never presented or turned over to the Defense, and was kept from the Defense." Petitioner is of the belief that this would have allowed the defense to dispute Officer Guillot's observation of the "wad of cash." In establishing a *Brady* violation, Petitioner must show that the prosecution withheld evidence. No monies were recovered; therefore, no monies were withheld by the prosecution. (Rec. Doc. No. 92 at 176). The government never claimed to be in possession of the buy money, photocopies of the buy money, or the specific denominations in which the $11,000 was given to Clements as buy money.

Petitioner seems to be operating under the impression that Guillot's testimony implicated him as to the entirety of the $11,000, and that an accounting would raise doubt as to

Guillot's testimony because the jury would not reasonably believe that Petitioner was in possession of that large of an amount. However, Guillot never testified to the amount he observed; Guillot testified that he observed "a wad of cash" about "two inches thick." (Rec. Doc. No. 92 at 265, 270). It is unclear how the denominations could have been used to impeach Guillot, when any denominations combination could be consistent with Guillot's testimony. The government did claim to be in possession of a recording of the serial numbers printed on the bills before the buy monies were given to Clements, which was made known to the defense. However, because the government did not recover the monies, the serial number recordings would not have served to impeach Guillot's testimony. (Rec. Doc. No. 92 at 266). The Court finds that Petitioner has failed to establish a due process violation under *Brady*.

   b. The *Giglio* Claim

   The deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.' *Giglio v. U.S.*, 405 U.S. 150, 153 (1972)(*citing Mooney v. Holohan*, 294 U.S. 103, 112 (1935). The government denies a criminal defendant Sixth Amendment due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. To obtain relief on due process grounds, a defendant must show that: (1) testimony

was actually false; (2) the government knew it was false; and, (3) the testimony was material. *Faulder v. Johnson*, 81 F.3d 515, (5th Cir. 1996).

Petitioner claims Agent Burriss testified differently in grand jury and at trial. Petitioner claims that before the grand jury, Agent Burriss testified that over the wiretap he heard Anderson tell Petitioner he wanted 4 1/2 ounces of heroin. Petitioner claims that at trial, Burriss testified that the wire was inaudible. Petitioner misconstrues Burris's testimony. Burriss testified "We activated the recorder...[a]nd I listened to the recording the following day. It was not a good recording. I mean, you could make out bits and pieces, words here and there, but the quality of the recording was poor."([Rec. Doc. No. 92 at 206](#)). Burris's testimony goes to the prosecution's decision not to play the recording for the jury, not what the agent heard over the wiretap. As the trial testimony was not actually false and as the recordings were turned over to the defense, the Court finds that Petitioner has failed to establish a due process violation within the meaning of *Giglio* or *Brady*.

4. *Unconstitutional Sentence*

In the instant petition, Petitioner claims this Court abused its discretion (a) by giving Petitioner an upward variance that was not warranted pursuant to 18 U.S.C Section 3553(a), and (b) by not submitting the factors that resulted in

the upward variance to the jury to be found beyond a reasonable doubt.

   a. **The Court's upward variance from the Sentencing Guidelines**

The Court is not required on Section 2255 Motions to reconsider claims of error raised and disposed of on direct appeal. *United States v. Webster*, 392 F.3d 787, 791 (5th Cir. 2004); *U.S. v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986); *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980). After this Court imposed a 360 month sentence for a second time, Petitioner challenged the sentence on direct appeal, claiming that this Court abused its discretion when it varied from the advisory guideline sentence. The Fifth Circuit affirmed this Court's sentence, finding that this Court appropriately considered the Section 3553(a) factors in imposing its sentence. *United States v. Kevin Lewis*, 496 Fed.Appx. 425, 4 (5th Cir. 2012). The Court declines to review this claim of error for a second time. There are no additional material factors or legal issues to warrant a different or lower sentence.

   b. **The Court's discretionary consideration of Section 3553(a) factors during sentencing**

The Sixth Amendment due process clause entitles a criminal defendant to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 477

(2000)(*citing In re Winship*, 397 U.S. 358 (1970)). Any fact that increases the mandatory minimum is an "element" that must be submitted to a jury and proved beyond a reasonable doubt. *Alleyne v. United States*, 133 S.Ct. 2151, 2155 (2013).

In *Alleyne*, the U.S. Supreme Court made clear that the holding "does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial fact-finding, does not violate the Sixth Amendment." 133 S.Ct. at 2163.

Petitioner contends that the original Presentence Report calculated the Base Offense Level at 26, and the Court's enhancement to Level 37 during resentencing increased the punishment, and therefore any factors considered should have been presented and found by a jury beyond a reasonable doubt. Although Petitioner was facing a mandatory minimum of 120 months, this Court sentenced him to 360 months. Whether or not *Alleyne* is retroactively applicable to this case, the Court both dismisses and denies this claim of error due to procedural default and on the merits.

First, the Court notes that Petitioner raises this particular claim of error for the first time. To reiterate the standard on procedural default, Petitioner may not raise an error for the first time on collateral review without showing both "cause," and "actual prejudice" resulting from the error.

*United States v. Frady*, 456 U.S. 152, 168 (1982)(*citing Davis v. United States*, 411 U.S. 233 (1973)). Petitioner must meet this cause and actual prejudice test even when he alleges fundamental constitutional error. *Murray v. Carrier*, 477 U.S. 478, 493 (1986). To prove "cause" for procedural default, a Petitioner must establish that some external force impeded his efforts to comply with the procedural rule. *Bagwell v. Dretke*, 372 F.3d 748, 757 (5th Cir. 2004).

The U.S. Supreme Court has recognized a narrow exception to the cause and prejudice test in an "extraordinary case," in which a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Murray*, 477 U.S. at 496. Petitioner has not alleged any external impediment that might have prevented raising this particular claim of error on direct appeal. Although Petitioner has taken issue with the effective assistance of appellate counsel, Petitioner has not alleged deficiency for failing to raise this particular claim. In addition, nothing in the record before the Court brings into question the accuracy of the jury's determination of Petitioner's guilt.

Second, Petitioner conflates an increase in the mandatory minimum floor with the imposition of a sentence above the mandatory minimum. A fact that triggers the mandatory minimum, or increases the legally prescribed mandatory minimum floor,

alters the prescribed range of sentences to which the criminal defendant is exposed. *Alleyne*, 133 S.Ct. at 2160. This Court's finding that a 360 month sentence was appropriate, in light of Petitioner's criminal background, the need to deter future crime and additional Section 3553(a) factors, was not a finding that triggered the mandatory minimum or raised the mandatory minimum floor. A conviction on the conspiracy charge, in combination with a prior felony conviction, triggered the mandatory minimum;[14] the Court's subsequent findings did not alter the mandatory minimum. The Court's sentence was well within the judicial discretion of the Court, was based upon findings not required to be presented to the jury, and is therefore consistent with the Sixth Amendment. *Id.* at 2163. The Court dismisses and denies this claim of error.

## Conclusion

Upon review of Petitioner's 2255 motion, subsequent pleadings, and the trial record and appellate record in this case, the Court finds conclusively that Petitioner is entitled to no relief, and further, that Petitioner is not entitled to an evidentiary hearing. Petitioner has failed to prove by a preponderance of the evidence that the claims of error constituted error *and* resulted in prejudice to Petitioner.

---

[14] 21 U.S.C. Section b(1)(B) (If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment).

Moreover, there is significant evidence of Petitioner's guilt in this case including, Clements's testimony, surveillance of Petitioner's car, the investigatory stop, and the telephone records.

Accordingly,

**IT IS ORDERED** that Petitioner's motion to vacate his sentence is **DENIED** and his post-conviction application is **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this 6th day of November, 2014.

_____
UNITED STATES DISTRICT JUDGE